Leo Fox, Esq.
*Attorney for Solomon Oberlander,*
*Shlomie Freund and Shmuel Badad*
630 Third Avenue – 18th Floor
New York, New York 10017
(212) 867-9595
leo@leofoxlaw.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

IN RE:

4504 15th and 1476 45 EQUITY PARNTERS LLC,                    Chapter 11

                                          Debtors.            Case No. 25-41415 (NHL)

-------------------------------------------------------------X

### NOTICE OF MOTION FOR PROPOSED ORDER DISMISSING THE CASE

***SIRS:***

    ***PLEASE TAKE NOTICE*** that upon the annexed Application of Solomon Oberlander, Shlomie Freund and Shmuel Babad, by their attorney Leo Fox, Esq., for an Order Dismissing the Case, the undersigned shall move on July 8, 2025 at 3:30 p.m. before the Honorable Nancy Hershey Lord, United States Bankruptcy Judge, United States Bankruptcy Court, Eastern District of New York, in her Courtroom, 271-C Cadman Plaza, Brooklyn, New York 11201, for an Order Dismissing the Case and for such other and further relief as is proper.

    ***PLEASE TAKE FURTHER NOTICE*** that objections, if any, to the relief sought shall be in writing, and served by first class mail upon Leo Fox, Esq., counsel to the Debtors, 630 Third Avenue, 18th Floor, New York, New York 10017, and upon the Office of the United States Trustee, Alexander Hamilton Custom House, One Bowling Green, Room 534, New York, New York 10004, so as to be received prior to seven (7) days before the return date of this motion at

FoxNAS\Leo\Clients\Oberlander Condo\Notice of Motion to Dismiss-Automatic Stay\V5\5-28-2025

12:00 noon, and at least seven (7) days prior to the return date of this motion, a courtesy copy of such objections shall be delivered to the Chambers of the Honorable Nancy Hershey Lord, United States Bankruptcy Judge, United States Bankruptcy Court, Eastern District of New York, 271-C Cadman Plaza, Brooklyn, New York, together with proof of service thereof, in accordance with the Local Rules, and filed with the Court.

**PLEASE TAKE FURTHER NOTICE** Judge Nancy Hershey-Lord conducts hearings telephonically and by videoconference. All participants must register with eCourt Appearances in advance of all telephonic and videoconference appearances. eCourt Appearances registration is required by both attorneys and non-attorney participants. Once registered, eCourt Appearances will email the telephone number and/or video link for your hearing. You may register for hearings weeks in advance, but the telephone number and/or video link will not be emailed to you until **48 hours before the hearing date**. Those registering with eCourt Appearances less than 48 hours in advance of the hearing should allow up to 15 minutes after registration to receive the email with the telephone number and/or video link. Those unable to access eCourt Appearances must email Judge Nancy Hershey-Lord's Courtroom Deputy at: nhl_hearings@nyeb.uscourts.gov at least two (2) business days prior to the hearing. Your

email must include your name, the case number(s), who you represent (if you are an attorney), hearing date, and phone number.

Dated: New York, New York
       May 28, 2025

                          Yours etc.,

                          ***SOLOMON OBERLANDER***
                          ***SHLOMIE FREUND***
                          ***SHMUEL BABAD***

By:    /s/ Leo Fox
        Leo Fox, Esq.
        *Attorney for Debtor Solomon Oberlander,*
        *Shlomie Freund and Shmuel Babad*
        630 Third Avenue – 18th Floor
        New York, New York 10017
        (212) 867-9595
        leo@leofoxlaw.com

Leo Fox, Esq.
*Attorney for Solomon Oberlander,*
*Shlomie Freund and Shmuel Badad*
630 Third Avenue – 18th Floor
New York, New York 10017
(212) 867-9595
leo@leofoxlaw.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
IN RE:

4504 15th and 1476 45 EQUITY PARNTERS LLC,                Chapter 11

                                  Debtors.                Case No. 25-41415 (NHL)

----------------------------------------------------------------X

## MOTION TO DISMISS CHAPTER 11 CASE OR, ALTERNATIVELY FOR RELIEF FROM THE AUTOMATIC STAY

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ……………………………………….. 4

PROCEDURAL HISTORY AND RELEVANT FACTS …………………… 5

THE PARTIES' AGREEMENT ……………………………………….. 7

THE ARBITRATION AGREEMENT AND RABBINICAL
COURT RULINGS AND AWARDS ………………………………….. 7

THE FREUND AND BABAD CONDO OWNERS ………………………… 13

THE INHERENT FRAUD IN THE SCHEDULES ……………………… 14

THIS CHAPTER 11 CASE SHOULD BE DISMISSED …………………… 17

JURSIDICTION AND VENUE …………………………………………… 19

    I.     This Court Should Dismiss the Chapter Case ………………… 19

    II.    Cause Exists to Dismiss the Chapter 11 Case
           Because it was not Filed in Good Faith ………………………… 20

THE DEBTOR HAS NO PROSPECT OR REHABILITATION
AND THERE IS SUBSTANTIAL CONTINUING DIMINUTION
OF ESTATE ASSETS ……………………………………………………… 23

ALTERNATIVELY, THE COURT SHOULD GRANT RELIEF
FROM THE AUTOMATIC STAY …………………………………………… 24

CONCLUSION

## TABLE OF AUTHORITIES

                                                                    **PAGE**

*In re 234-6 W. 22nd St. Corp.*
214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997) …………………………………..          25

*In re AMC Realty Corp.*
270 B.R. 132, 140 (Bankr. S.D.N.Y. 2001) …………………………………..          20, 21

*In re Artisanal*
2017 Bankr. LEXIS 3813 at \*37 (Bankr. S.D.N.Y. Nov. 3, 2017) …………….…          22

*In re Halpern*
229 B.R. 67, 76 n.17 (Bankr. E.D.N.Y. 1999) …………………………………..          21

*In re Kaplan Breslaw Ash, LLC*
264 B.R. 309, 334 (Bankr. S.D.N.Y. 2001 …………………………………..          20, 21

*In re Kingston Square Assocs.*
214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997) …………………………………..          21

*In re Red Bull Taxi Inc.*
2017 Bankr. 1209 at \*9-12 (Bankr. S.D.N.Y. May 3, 2017) …………………….          22, 23

*In re Sonnax Industries*
907 F.2d 1280, 1286 (2nd Cir. 1990) …………………………………………..          25

*Baker v. Latham Sparrowbush Assoc.*
*(In re Cohoes Indus. Terminal, Inc.)*
931 F.2d 222 (2d Cir. 1991) …………………………………………………..          21

*C-TC 9th Ave. P'ship v. Norton Co. (In re: C-TC 9th Ave. P'ship)*
113 F.3d 1304, 1313 (2d Cir. 1997) …………………………………………..          20, 22

*Primestone Inv. Partners L.P. v. Vornado PS, LLC*
*(In re Primestone Inv., Partners L.P.)*
272 B.R. 544, 557-58 (D. Del. 2002) …………………………………………..          22

*Sapphire Dev., LLC v. McKay*
549 B.R. 556, 566-68 & n.14 (D. Conn. 2016) …………………………………..          21

*In re Syndicom Corp.*
268 B.R. 26, 50 (Bankr. S.D.N.Y. 2001) …………………………………………..          22

**Bankruptcy Code**

§ 362(d) ............................................................................................... 20

§ 362 (d)(1) .......................................................................................... 26

§ 362(g) ................................................................................................ 25

§ 365(j) ................................................................................................. 18

§ 1112 .................................................................................................. 21

§ 1112(b) .............................................................................................. 5, 20, 21

§ 1112 (b)(1) ........................................................................................ 20

§ 1112(b)(4) .......................................................................................... 20

§ 1112(b)(4)(A) ..................................................................................... 21, 24

**Bankruptcy Rules**

Rule 9001 .............................................................................................. 21

**Collier**

7 Collier on Bankruptcy ¶ 1112.07(b)(a) (16th ed) ............................... 21

**CPLR**

CPLR § 6301 ........................................................................................ 6, 7

CPLR § 7502(c) ................................................................................... 6, 7

**Statutes**

11 U.S.C. § 101 .................................................................................... 5

11 U.S.C. § 1112(b) ............................................................................. 6, 20, 26

28 U.S.C. § 157 .................................................................................... 20

28 U.S.C. § 157(b) ............................................................................... 20

28 U.S.C. § 1334 .................................................................................. 20

28 U.S.C. § 1408 ................................................................................... 20

28 U.S.C. § 1409 ................................................................................... 20

TO:   THE HONORABLE NANCY HERSHEY LORD
      UNITED STATES BANKRUPTCY JUDGE

Solomon Oberlander ("*Oberlander*"), Chevad Freund ("*Freund*"), Shmuel Babad ("*Babad*"), owners of three (3) condominium units (the "*Condo Units*"), which form the building of the Debtor located at 1476 45th Street, Brooklyn, New York (respectively the "*Condo Owners*"), by and through their undersigned counsel, files this motion (the "*Motion*") for entry of an Order, substantially in the form annexed hereto as *Exhibit A*, dismissing the bankruptcy case of the above-captioned debtor (the "*Debtor*") pursuant to § 1112(b) of title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "*Bankruptcy Code*") or, alternatively, for relief from the automatic stay pursuant to § 362(d) of the Bankruptcy Code.

**PRELIMINARY STATEMENT**

1.     The Debtor filed this Chapter 11 case as Oberlander's attorneys contacted the Debtor's State Court attorneys requesting a date for a Closing and submitting an Order and Judgment of the New York State Supreme Court, County of Kings, dated March 3, 2025 (*Exhibit B*), directing the Debtor and Nechemia Weinberger ("*Weinberger*") the Debtor's principal, to proceed to Closing on the sale on the Condo Units to the Condo Owners and directing that upon the payment of the balance of the Purchase Price, that the Debtor and Weinberger, jointly and severally, pay all the liens and debts on the Condo Units, other than the excepted liens and transferring ownership free and clear of any liens; and as to the two (2) other Condo Owners (Freund and Babad), as the arbitrators issued a decision, dated March 25, 2025 (*Exhibit C*), also directing the sale of and the Closing on Condo Units #1 and #3 to the two (2) Condo Owners and upon the payment of the Purchase Price balance to pay off all liens and encumbrances upon the Condo Units.   This Arbitration Decision was about to be submitted to the State Court for confirmation but was stayed by the filing of the Debtor's Chapter 11 filing.   The whole purpose of

this bankruptcy was to avoid Closing on the Contracts in effect breaching the Contracts by the Debtor to convert value of the Condo Apartments from the rightful owners, the Condo Owners. The Debtor proceeded to effect this by filing false Schedules and making misrepresentations to this Court. After extensive State Court litigation, this Court should dismiss this case and let the Condo Owners proceed to Closing to purchase the Condo Units that they agreed to purchase years ago.

## **PROCEDURAL HISTORY AND RELEVANT FACTS**

2.      Oberlander commenced this underlying action against the Debtor on May 17, 2024, with the filing of the Summons and Complaint and a notice of pendency on the Condo Units, solely to preserve the status quo (Index No. 513907/2024 – Supreme Court – County of Kings).

3.      On May 31, 2024, Oberlander moved by Order to Show Cause (the "*OSC*") for a Temporary Restraining Order (the "*TRO*") and preliminary injunction, pursuant to CPLR §§ 6301 and 7502(c), "*enjoining [Debtor] and its agents from leasing, transferring, conveying, encumbering, altering, disposing of, or otherwise taking any action that would alter the status quo and/or deprive Plaintiff of or diminish his interest in all or any portion of the Premises*" (*Exhibit D*).

4.      The State Supreme Court signed the OSC on June 3, 2024, granting the TRO pending a hearing on the OSC and scheduling a hearing for June 20, 2024.

5.      Thereafter, on June 18, 2024, the parties filed a stipulation to be so ordered by the Court, to adjourn the hearing on the OSC to July 26, 2024, and continue the TRO "*until further Order of the Court*" (the "*Proposed Stipulation*").

6.      On June 20, 2024, the State Supreme Court so-ordered a modified version of the Proposed Stipulation, adjourning the hearing of the OSC to July 25, 2024, with Debtor's opposition

to be filed by July 18, 2024 (the "*So Ordered Stipulation*"; NYSCEF Doc. 18) (*Exhibit E*).  The

So Ordered Stipulation continued the TRO "*until further Order of the Court*".

      7.     On July 17, 2024, the parties jointly filed a proposed consent order (the "Proposed

Consent Order"); NYSCEF Doc. 19) (*Exhibit F*) to be so ordered by the Court, pursuant to which,

for purposes of resolving the OSC, Debtor consented to the issuance of a preliminary injunction

order providing that "*pursuant to CPLR §§ 6301 and 7502(c), [Debtor] and its agents are enjoined

from leasing, transferring, conveying, encumbering, altering, disposing of, or otherwise taking any

action that would alter the status quo and/or deprive Plaintiff of or diminish his interest in all or

any portion of the premises known as Unite Number 2 of The 1476 45th Street Condominium

located at 1746 45 Street, Brooklyn, New York 11219, Block 5618, Loc 1802*" (the "*Preliminary

Injunction*") (*Exhibit G*).

      8.     On July 25, 2024, the State Supreme Court so-ordered the Consent Order, granting

the Preliminary Injunction, modified by the Court as follows:

> Pursuant to CPLR §§ 6301 and 7502(c), Defendant and its
> agents are enjoined from leasing, transferring, conveying,
> encumbering, altering, disposing of, or otherwise taking any
> action that would alter the status quo and/or deprive Plaintiff
> of or diminish his interest in all or any portion of the
> premises known as Unit Number 2 of The 1476 45th Street
> Condominium located at 1476 45th Street, Brooklyn, New
> York 11219, Block 5618, Loc 1802 *without further order of
> this Court.*

NYSCEF Doc. 20 (the "*Consent Order*") (italicize language added by the Court) (*Exhibit H*).

      9.     On July 25, 2024, Oberlander filed an Amended Complaint adding Necham

Weinberger, the Debtor's principal, as a defendant for the purpose of confirming the Interim and

Final Arbitration Awards as against Weinberger personally in accordance with the Beth Din's

decisions and rulings.

## THE PARTIES' AGREEMENT

10.     The Debtor is the Sponsor and Selling Agent under the Condominium Offering Plan for the Condominium, including the Premises.

11.     The Debtor and Oberlander are parties to a Purchase Agreement dated as of September 12, 2023, as modified by an Addendum to Contract (the "*Addendum*" and, together with the Purchase Agreement, the "*Contract*"), pursuant to which Debtor agreed to sell Unit #2 the Premises to Oberlander for the original price of $2,400,000 reduced to $2,300,000 (*Exhibit I*) and Oberlander advanced a total of $800,000 as a down payment ($600,000) or loans ($200,000) for a net due of $1,500,000.  Pursuant to the Addendum, the Debtor also agreed to provide a contribution of $100,000.00 toward Oberlander's closing costs, effectively reducing the purchase price to $2,200,000.00.

12.     Pursuant to Section 2 of the Contract, the Plan is expressly incorporated into the Contract "*with the same force as set forth [in the Contract] at length*".

## THE ARBITRATION AGREEMENT AND RABBINICAL COURT RULINGS AND AWARDS

13.     On or about late 2023, the Debtor and Weinberger advised the Condo Owners that, as a consequence of increased costs, the Debtor and Weinberger had determined to increase the cost of the units by $400,000 for Unit #2 and $225,000 each for Units #1 and #3 totaling an $850,000 increase.  The Condo Owners refused to accept this increase stating that they had a binding contract which fixed the price, and the Debtor and Weinberger had not submitted any good reason to demand an increase in the price.

14.     The parties had executed a written arbitration agreement dated December 6, 2023 (the "*Arbitration Agreement*") (*Exhibit J*) to deal with the dispute.  Weinberger selected the Tartikov Beth Din as the Arbitrator and Oberlander (as well as the other Condo Owners) consented.

15.    The Debtor and Weinberger were directed, by the Beth Din, to substantiate their claims that the costs of construction had increased.

16.    On March 10, 2024, the Beth Din issued the interim Rabbinical Court Ruling (the "*First Interim Award*) (*Exhibit K*).

17.    Pursuant to the First Interim Award, the Beth Din ruled the Contract to be valid and that the Debtor may increase the purchase price under the Contract by the sum of $40,000.00 (the "*Price Increase*"), to be paid by Oberlander at closing, provided that all work that the Debtor is required to perform on the Premises pursuant to the Contract (the "*Work*") is completed prior to closing. If the Work is not completed prior to closing, the First Interim Award required Oberlander to escrow the Price Increase until the Work is completed.

18.    The First Interim Award also contemplated that the parties would proceed to closing under the Contract without delay.

19.    In or around early April 2024, the parties returned to the Beth Din, as the Debtor continued to refuse to proceed to closing and the parties disputed whether Debtor had completed the Work required under the Contract.

20.    During the course of this second Arbitration, the Debtor and Weinberger raised, for the first time, an argument that the Debtor and Weinberger did not own the Condo Units or the building in which the Condo Units were located and that the Debtor was subject to a undisclosed alleged trust agreement with a Mr. Beck which provided that the Debtor's property at 1476 45th Street, Brooklyn, New York could not be transferred to the Condo Owners until the Debtor had completed construction on a different tax lot property owned by Mr. Beck. The Debtor and Weinberger never disclosed this previously in the Beth Din, the Contract or in the Condominium declaration filed with New York State.

21.     On April 11, 2024, the Beth Din issued an interim Rabbinical Court Decision (the "*Second Interim Award*") (*Exhibit L*).

22.     Pursuant to the Second Interim Award, the Beth Din determined that the Contract is valid and enforceable, and directed the parties "*as ruled in the [First Interim Award] ... to hasten the closing of the purchase [of the Premises] ... with no delay, and to do whatever in their power so there is not delay for their part, neither about making the closing nor about obtaining a mortgage; certainly not to impose liens against the [Premises]. . . .*"

23.     The Beth Din rejected the argument that the Debtor was unable to close on account of another interest in the Condo Units or the building in which the Condo Units are located "*in any event [Weinberger has declared that he is the sole owner and thus is able to sell]*" (see Final Award - ¶5).

24.     Following the Beth Din's issuance of the Second Interim Award, Debtor and Weinberger continued to refuse to close on the sale of the Premises.  On May 17, 2024, Oberlander commenced an action in the New York State Supreme Court to confirm the Arbitration, among other things.

25.     On June 25, 2024, the Beth Din issued its final Rabbinical Court Ruling (the "*Final Award*") (*Exhibit M*).

26.     The Final Award determined that the Debtor is required to close the sale with Oberlander "*at the price that's in the agreement between them, and pursuant to the specifications of the apartment and the terms that's in the agreements and in the condo documents ... within thirty days [i.e., July 25, 2024 (the "Closing Date")].*"

27.     The Final Award also determined that the Purchaser is required to pay "*one million six hundred thousand dollars [$1,600,000.00] only (the "Purchaser Price Balance")* (for a total

of $2,400,000, the original Purchase Price amount) *[a]nd he is exempt from paying the forty thousand dollars [$40,000.00] (the "Price Increase")*" referenced in the First Interim Award, "*for it is included in the [Purchaser's] counterclaim for Isske.*"

28.    The Final Award also determined that "*[Debtor is personally responsible to deliver free and clear title, free of any encumbrance, and to complete all he committed to do in the [Premises]. Therefore, [Debtor] is required to pay all liens and debts on the [Premises]; not to mention that [Debtor] shall not add additional encumbrances to the asset.*"

29.    As noted above, the Final Award also rejected Debtor's claim that the Debtor and Weinberger was unable to sell the Premises because Debtor had failed to prove the claim and, "*in any event, [Debtor] has declared he is the sole owner, and thus is able to sell [the Premises to Purchaser]. Therefore, [Debtor] must do so, and if there are obstacles by others, he is required to remove them.*"

30.    To ensure that the Debtor proceeds to Closing and delivers free and clear title to the Premises, the Final Award also ordered that, "*[i]n case the [Premises] will – G-d forbit – not be delivered to [Purchaser – Oberlander] Is not delivered to Purchaser, "[Debtor] is required to pay [Purchaser - Oberlander] the sum of eight hundred thousand dollars [$800,00] that [Debtor] got from [Purchaser], and all that [Purchaser] has invested in the [Premises], as well as 8% Isske on the loan [pursuant to the Isske Agreement] of two hundred thousand dollars from [] [March 16, 2022]" (the "Lien Amount")*".

31.    The Final Award confirmed that "*[a]ll other items in the Rabbinical Court Rulings and Rabbinical Court Letters that do not contradict the provisions [in the Final Award], remain in place.*"] The Beth Din did agree to hear the Debtor's and Weinberger's arguments regarding the inability of the Debtor and Weinberger to close on the Condo Units but rejected the arguments that

the Debtor could not Close. The Becks, the third parties, who were named as the stumbling blocks to a Closing, acknowledged and admitted in the later Beth Din involving the other two (2) Condo Owners, Messrs. Freund and Babad (*see infra*), that the Becks had nothing to do with the Condo Owners, were not partners with the Debtor or Weinberger and that such disputes had nothing to do with the Beth Din involving Oberlander.

32.    The Debtor and Weinberger did not abide by the Beth Din's rulings pursuant to the Interim and Final Awards. The Debtor and Weinberger did not proceed to Closing on or before the Closing Date of July 25, 2024, and did not deliver Condo Unit #2 to Oberlander free and clear title to the Premises.

33.    By motion dated August 1, 2024, Oberlander moved (a) to confirm the Interim and Final Awards in the Arbitration Proceedings, (b) for entry of a judgment in accordance with the Arbitration Proceedings requiring that the Debtor and Weinberger immediately proceed to Closing pursuant to the Contract and Addendum and the Condominium Offering Plan, and (c) upon Oberlander's payment at the Closing of the sum of $1,600,000 for the Debtor to pay all liens and debts on the Premises and caused to be delivered to Oberlander a Bargain and Sale Deed with covenant against Debtor's and Weinberger's acts free and clear of any liens, encumbrances or title except for the excepted liens identified in an exhibit to the Contract, (d) providing for a lien on the Premises in the amount of the Initial Purchase Price until the Debtor and Weinberger proceeded to Closing and (e) as well as continuing the Preliminary Injunction pursuant to the stipulated Consent Order between the Debtor and Oberlander. The Debtor and Weinberger cross moved to vacate the Interim and Final Awards.

34.    The State Court, in its Order dated November 22, 2024, (i) denied Oberlander's motion to confirm, without prejudice to renewal upon the Beth Din issuing a supplement Final

Award clarifying the circumstances surrounding statements made in the Beth Din as to certain consequences as to the rights of the parties including Oberlander to a lien on the Condo Units until the Purchase Amount was paid and the Closing occurred.

35.    The Debtor's and Weinberger's motion seeking to vacate the Interim and Final Arbitration Awards was denied (*Exhibit N*).

36.    The Beth Din complied with the State Court Order dated November 22, 2024, and issued a clarification (*Exhibit O*).  The State Court, in its Order dated January 16, 2025, granted Oberlander's Motion to confirm the Final Arbitration Award and granting a continuation of the Preliminary Injunction pursuant to the Consent Order dated July 17, 2024, until the Debtor's compliance with the Interim and Final Arbitration Awards and delivery of the Condo Unit 2 to Oberlander with free and clear title (*Exhibit P*).

37.    By Order dated March 3, 2025 (*Exhibit Q*), the State Court entered a judgment directing the Debtor to proceed to Closing, fixing the sales unpaid balance under the Contract at $1,600,000.00 and directing that the Debtor, and Weinberger, individually, pay all non-exempted liens and debts and deliver a Bargain and Sale Deed, with free and clear title and that the Debtor not add any encumbrances and remove all obstacles to Closing including liens, other than the excepted liens.  In the event, for the reasons beyond the Debtor's control, *i.e.*, the Debtor no longer owns the Condo Units such as foreclosure, fire or earthquake, and are thus unable to close, the Debtor and Weinberger, jointly and severally, shall pay to Oberlander the sum of $800,000.00 plus interest and finally continuing the injunction prohibiting the Debtor and Weinberger from further transfers.

38.    By letter dated March 5, 2025, Oberlander's counsel sought to schedule a date for Closing (*Exhibit R*).

## THE FREUND AND BABAD CONDO OWNERS

39.     In November 2021, Chedva Freund entered into the Contract (see *Exhibit O*) for the purchase of the first floor and basement of the Condominium located at 1476 45th Street, Brooklyn, New York for $1,800,000 against which a down payment of $568,000 was made leaving her with a closing amount due of $1,232,000.  In February 2022, Shmuel Babad entered into the Contract  to purchase the 4th floor of the Condominium for $1,800,000 against which a down payment of $956,500 was made leaving him with a closing amount due of $843,500.  In late 2023, Weinberger approached Freund and Babad demanding that the price be increased as a consequence of the cost of construction having increased.  The Contract provided that any disputes that came up would be brought to the Tartikov Beth Din pursuant to previously executed agreements selecting the Tartikov Beth Din.  As a consequence of the decisions made by the Beth Din in favor of Oberlander, however Weinberger refused to continue with the Tartikov Beth Din.

40.     Babad and Freund were concerned with the conduct of the Debtor and Weinberger during the Oberlander Beth Din and to preserve their rights, filed a Summons and Complaint in the New York State Supreme Court on June 2024 (*Exhibit S*) and, in addition, filed Notices of Pendency upon their Condo Units (*Exhibit T*).  Freund and Babad, the Debtor and Weinberger, agreed to enter into Arbitration with a different Beth Din entitled Tzedek Mishpat Beth Din which Weinberger insisted was agreeable.

41.     The parties entered into an Arbitration Agreement (*Exhibit U*).

42.     The Beth Din was conducted over four (4) sessions (February 9, 2025, March 9, 2025, March 18, 2025, and March 25, 2025).  At the Beth Din, Weinberger again raised the issue that he could not Close on the Contract in light of the joint venture agreement with Mr. Beck previously undisclosed who had owned the Property located at 1476 45th Street, Brooklyn, New

York and to whom Weinberger allegedly stated would not allow him to Close until the Debtor and Weinberger completed a construction job with respect to the separate tax lot involving Mr. Beck.

43.     On March 25, 2025, the new Beth Din ruled (*Exhibit V*) that Weinberger and the Debtor (Party B) had the full authority to sell the Condo Units and that the Buyers, *i.e.*, the Condo Owners (Freund and Babad), are the owners of the Condo Units, that upon the payment of the balance owed under the Contract the Condo Owners could take possession and Weinberger was required to transfer the Condo Units by Quick Claim Deed.  The Condo Owners could elect to pay off the mortgage owed to J.G. Funding Corp. using the balance owed to the Debtor.  Weinberger and the Debtor had no right to further encumber the Condo Units.

44.     Freund and Babad proceeded to request that this ruling be incorporated in a motion to confirm the Arbitration Award which could not proceed in light of the bankruptcy filing.

### THE INHERENT FRAUD IN THE SCHEDULES

45.     Thereafter, on March 26, 2025, and to avoid being required to Close on the Oberlander Contract and prior to the confirmation of the Freund and Babad Arbitration Awards, the Debtor filed its Chapter 11 Petition.

46.     Notably, the Petition is scarce of any detail or integrity.  The extensive litigation is not disclosed.  Secured creditors (Schedule D), Construction Lumber Corp. holding a claim of $270,237.47 and, Premium Repairs LLC holding a claim of $376,432, on account of mechanics liens maintain an address at 4203 13th Avenue, 2nd Floor, which is the Debtor's business address and listed as such on the Contracts.  These two entities were also formed by Weinberger (*Exhibit W* and *Exhibit X*), placing the Debtor's principal in a squarely conflicted position of being the Debtor as well as the principal of two (2) creditors holding purported secured claims in the aggregate amount of $646,699.47.  The Schedules reflect that these "*creditors*" are not insiders.

These unsecured creditors are listed by the Debtor on the Schedules as not being an insider or related party.

47.    The secured creditors, include J.G. Funding Corp., holding a mortgage in the Condo Building (Schedule D) which the Condo Owners agree constitutes a lien on the Condo Units.

48.    The list of unsecured creditors includes Leon Eisner holding a claim of $650,000 which is listed as disputed.  However, on March 24, 2025, two (2) days before the Chapter 11 filing, Mr. Weinberger executed an Affidavit of Confession of Judgment on behalf of the Debtor in favor of Leon Eisner indicating that the Debtor owes Leon Eisner $500,000 "*representing monies justly due and owing to Plaintiff pursuant to such note*" (*Exhibit Y* - ¶2).  PTC Holdings Sub C LLC is scheduled holding a claim of $650,000 but in a series of filings in the New York State Supreme Court, it appears that Weinberger fraudulently induced PTC Holdings Sub C LLC to pay $650,000 "for what was purportedly a 100% membership interest in 4505 15th and 1476 45 Equity Partners LLC" (*Exhibit Z* - Complaint ¶1 – Rockland County – Index # 030241/2025 filed on January 13, 2025) (*Exhibit AA*) which was converted by a Stipulation of Settlement dated March 13, 2025, in Rockland County, into a Confession of Judgment (*Exhibit BB*) which was thereafter entered into a Judgement, by confession, dated March 12, 2025, in the Supreme Court – County of Kings (*Exhibit CC*).   Here, this creditor, at best, holds a claim directed to the equity of the Debtor and not to the assets to the Debtor despite its recent conversion of a shareholder interest into a creditor interest.  Furthermore, this creditor is scheduled as "*contingent*".

49.    There exists various other construction related or other claims of approximately $100,000 which are scheduled on the Schedules.

50.    The Schedules list Oberlander holding a claim of $790,000 despite the multiple decisions of the Beth Din and the New York State Supreme Court entitling Oberlander to a Closing

upon his Condo Unit, on the payment of $1,600,000. The Schedules do not reflect any of the Condo Owners' rights as purchasers with substantial deposits as holding secured claims for the down payments which were made by the Condo Owners in the amount of excess of $2,300,000 (Oberlander - $800,000, Freund - $568,000 and Babad - $956,500 = $2,324,500) pursuant to § 365(j) of the Bankruptcy Code (without prejudice to the Condo Owners' rights as owners established by law). The Schedules do not refer to Messer's. Freund and Babad claims and rights at all.

51.     The Local Rule Affidavit and the MORs reflect the Debtor as having no income. The Debtor's plan in its position as to sell the Condo Units free and clear of all liens to attach to the proceeds and enables the Debtor to freely breach its Contracts to sell the completed Condo Units without taking into account the Condo Owners' rights to possession and ownership and to liens granted to the Condo Owners pursuant to extensive litigation, which are all undisclosed in the Petition or Schedules.

52.     The Debtor included as related cases 75 Essex Corner LLC (Case No. 25-41388) and Eisner Brothers Realty Corp. (Case No. 25-41389). Both cases seem to be related to Weinberger's failure to complete the construction projects which it had undertaken to complete, and which had apparently been owned by another party. However, in the Eisner case, the Debtor is reflected as having an 85% membership interest, while here Eisner is alleged to hold a $650,000 claim.

53.     Thus, to summarize, the Becks have a claim on 4505 15th Avenue, Brooklyn, New York, which is a different property than the Condominium Project owned by the three (3) Condo Owners. Purported secured creditors Construction Lumber and Premium Repairs are insiders holding claims which Weinberger, the Debtor's principal, is attempting to illegally get paid. J.G.

Finding Corp., the secured lender, is scheduled as owed $2,800,000, which can be funded by the Condo Owners from the closing balances of the Purchase Price of the Condo Owners of $3,675,000 (Oberlander - $1,600,000, Freund - $1,232,000 and Babad - $843,500 = $3,620,000). All the claims are scheduled as unsecured, listed as contingent, disputed or for relatively minor amounts for construction totaling approximately $100,000 and another unspecified creditor, PTC Holdings Sub C LLC, holds a claim for $650,000. There is nothing to reorganize here.

## THIS CHAPTER 11 CASE SHOULD BE DISMISSED

54.    This Chapter 11 case should be dismissed, or, alternatively, the Court should grant relief from the automatic stay so that the Condo Owners can exercise their remedies under the applicable State Law. Each of the Arbitration Awards and the New York State Supreme Court Orders confirming these Arbitration Awards were rendered meticulously with attention to detail and were examined carefully by the New York State Supreme Court before confirming the Awards. Indeed, the New York State Supreme Court "*remanded*" the Award back to the Arbitrators to clarify its determinations. Each of these Decisions are reasonable based on fact and law. No Court, other than the New York State Supreme Court, is able to reverse any component of the State Court Orders. This Court should not sit as an Appellate Court as a matter of jurisdiction or as a matter of the Rooker Feldman Doctrine.

55.    *First*, upon information and belief, the Debtor filed this bankruptcy case without legal authority by attempting to re-litigate extensive State Court proceedings which ruled that the Debtor had transferred the property located at 1476 45th Street, Brooklyn, New York to the Condo Owners pursuant to the Contract and the Condo Declaration. This Plan announced in the Debtor's Petition is predicated on the Debtor's breach of the contracts with the Condo Owners by manufacturing "*secured creditors*" to divert the Condo Owners' rights in the Condo Units to

Weinberger personally to pay his undisclosed corporations as Schedule D secured creditors and to illegally usurp any value of the Debtor's condominium payment from the Condo Owners to Mr. Weinberger. Such a Plan cannot, even on a threshold basis, meet the "*good faith*" requirement for a Plan.

56.     *Second*, the Chapter 11 case was not filed in good faith, but, instead, to frustrate what is a two-party dispute (Condo Owners vs. Weinberger) that would be fully resolved by the conclusion of the State Court litigation. The Debtor has no real creditors on the Condo Units other than the secured creditor, Condo Owners and no creditors with claims worth even a fraction of the Condo Owners claims. Indeed, this bankruptcy case is a continuation by the Debtor in the State Court Litigation to thwart the Condo Owners' rights.

57.     *Third*, there is no equity belonging to the Debtor in the Condo Owners property consisting of the Condominium Apartments which were sold two (2) years ago to the Condo Owners. As of the Petition Date, the Debtor owes more than $3,500,000 if the Debtor's Schedules are to be believed. As such, the Debtor lacks any equity in its sole asset.

58.     *Fourth*, the Debtor seeks only to deprive the Condo Owners of their property by using a proposed sale of the Condo Units belonging to the Condo Owners and does not have a realistic chance of using Chapter 11 to reorganize while there is substantial, continuing diminution of the estate's assets. By its own admission, the Debtor has no cash; it has no source of income nor any material assets other than the Condo Ownership which it does not own.

## JURISDICTION AND VENUE

59.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).

60.     This is a core proceeding pursuant to 28 U.S.C. § 157(b).

61.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

62.     The statutory predicates for the relief sought herein are §§ 362(d) and 1112(b) of

the Bankruptcy Code.

I.

## THE COURT SHOULD DISMISS THE CHAPTER 11 CASE

63.     Section 1112(b)(1) of the Bankruptcy Code provides, in relevant part:

> *Except as provided in paragraph (2) and subsection (c), on request*
> *of a party in interest, and after notice and a hearing, the court shall*
> *convert a case under this chapter to a case under chapter 7 or*
> *dismiss a case under this chapter, whichever is in the best interests*
> *of creditors and the estate, for cause. . . .*

11 U.S.C. § 1112(b)(1).

64.     Section 1112(b)(4) of the Bankruptcy Code provides a list of circumstances that

constitute *"cause"* supporting a dismissal. *See Id.* § 1112(b)(4).  The list, however, is not

exhaustive and court may consider other facts and circumstances to determine cause, including

where a case was filed in bad faith.  See *C-TC 9th Ave. P'ship v. Norton Co.*  (*In re C-TC 9th Ave.*

*P'ship*), 113 F.3d 1304, 1313 (2d Cir. 1997); *In re AMC Realty Corp.*, 270 B.R. 132, 140 (Bankr.

S.D.N.Y. 2001); *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 334 (Bankr. S.D.N.Y. 2001).

65.     Here, ample cause exists to dismiss this case because (a) it was filed in bad faith

and (b) there is no reasonable likelihood of rehabilitation and a substantial or continuing loss to or

diminution of the estate.

II.

## CAUSE EXISTS TO DISMISS THE CHAPTER 11 CASE
## BECAUSE IT WAS NOT FILED IN GOOD FAITH

66.     While not listed under § 1112(b)(4), the Second Circuit recognized that cause to

dismiss a chapter 11 case exists where the case was not filed in good faith.  See *C-TC 9th Ave.*

*P'ship*, 113 F.3d at 1311; *In re AMC Realty Corp.*, 270 B.R. at 140; *In re Kaplan Breslaw Ash*, 264 B.R. at 334.[1]  Court in the Second Circuit look to the following factors as indicia of bad faith (hereinafter, the "*C-TC Factors*"):

1.  The debtor has only one asset;

2.  The debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

3.  The debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debtor;

4.  The debtor's financial condition is, in essence, a two-party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

5.  The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

6.  The debtor has little or no cash flow;

7.  The debtor can't meet current expenses including the payment of personal property and real estate taxes; and

8.  The debtor has no employees.

---

[1] Courts are split on whether the movant must also show "*objective futility*" of a reorganization to demonstrate bad faith.  Compare *In re Kingston Square Assocs.*, 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997) ("*The standard in this Circuit is that a bankruptcy petition will be dismissed if both objective futility of the reorganization process and subjective bad faith in filing the petition are found.*" (citing, inter alia, *Baker v. Latham Sparrowbush Assocs.* (*In re Cohoes Indus. Terminal, Inc.*), 931 F.2d 222 (2d Cir. 1991)), with *Sapphire Dev., LLC v. McKay*, 549 B.R. 556, 566-68 & n.14 (D. Conn. 2016) (noting that "*federal circuits disagree on the question of whether to dismiss a case for bad faith filing under § 1112(b), a court must find objective futility of reorganization*" and holding that under C-TC, subjective bad faith or objective futility is sufficient to dismiss case); *In re Halpern*, 229 B.R. 67, 76 n.17 (Bankr. E.D.N.Y. 1999) (finding that a "*disproportionate burden*" is placed on a movant if both objective futility and subjective bad faith need to be demonstrated, and noting that an odd result would occur if both were required since a debtor that clearly filed in subjective bad faith "*could use bankruptcy as a safe haven to delay and frustrate creditors*" if it possessed an "*objective*" means to reorganize).  The *Sapphire* and *Halpern* courts both found that the cited-to sentence in *Cohes* regarding objective futility pertained to Bankruptcy Rule 9001 sanctions against an attorney that filed a frivolous bankruptcy petition and did not address the dismissal standard under § 1112 of the Banrkutpcy Code.  See *Sapphire*, 549 B.R. at 567-68; *Halpern*, 229 B.R. at 76 N.17.  The *Sapphire* court quoting *Collier's* noted, "*because the 'absence of a reasonable likelihood of rehabilitation' is already an enumerate cause in §1112(b)(4)(A), 'adding . . . the element of objective futility . . . may effectively negate bad faith filing as a basis for dismissal or conversion of the case.'*" 549 B.R. at 567 (quoting 7 Collier on Bankruptcy ¶ 1112.07(b)(a) (16th ed)).  Nevertheless, to the extent objective futility is required to be shown, the Debtor has no reasonable prospect of reorganization for the reasons discussed herein.

*C-TC 9th Ave. P'Ship*, 113 F.3d at 1131 (quotation and citations omitted); *In re Syndicom Corp.*, 268 B.R. 26, 50 (Bankr. S.D.N.Y. 2001) (applying C-TC Factors to dismiss bankruptcy petition filed in bad faith); *In re Red Bull Taxi Inc.*, Ch. 11 Case No. 16-13153, 2017 Bankr. 1209, at *9-12 (Bankr. S.D.N.Y. May 3, 2017) (same). Not one factor is determinative, and courts may consider any or all of the C-TC Factors. See *In re Artisanal*, Ch. 11 Case No. 17-12319, 2017 Bankr. LEXIS 3813, at *37 (Bankr. S.D.N.Y. Nov. 3, 2017).

67.    Under the circumstances of this chapter 11 case, application of all the C-TC factors demonstrate that the Debtor filed this Chapter 11 case in bad faith.

68.    *First*, the Debtor only has one (1) principal asset that it uses to unfairly use bankruptcy to deprive its owners of the asset. Nothing prevents the Debtor from reorganizing the property owned by the Becks in a way that is advantageous to the Debtor and the Becks. Bad faith cases often involve cases where there is the last-ditch effort to fend off foreclosure, *Primestone Inv. Partners L.P. v. Vornado PS, LLC* (*In re Primestone Inv. Partners L.P.*, 272 B.R. 544, 557-58 (D. Del. 2002) (dismissing case where debtor's only asset was limited to partnership units). Here, the Debtor continually ignored and thereby violated the Arbitration Decisions and the State Supreme Court Orders to proceed to a sale and finally filed a bankruptcy literally before it would have been subject to another motion to the State Supreme Court for failing to schedule a sale or to face another motion to confirm the Arbitration made by Freund and Babad.

69.    *Second*, the Debtor appears to have a few unsecured real creditors other than creditors manufactured to permit Weinberger to pay himself for construction expenses that Weinberger was obligated to pay under his Contracts with the Condo Owners. As noted above, other than the secured creditor, the Mortgagee, there is approximately $100,000 undisputed non-contingent claims. The legitimacy of the other creditors scheduled by the Debtor has already been

addressed and simply confirms that the bankruptcy seems to be a vehicle to deprive the Condo Owners of the Condo Units.

70.     *Third*, the Debtor's Condo Unit asset is the subject of extensive litigation in the State Court which has been exhaustively litigated both at the Arbitration Award level and at the confirmation of the Arbitration Award level in the State Supreme Court and should not be relitigated even if this Court held jurisdiction to vacate the Orders of the New York State Supreme Court.

71.     *Fourth*, this case is effectively a two-party dispute between the Condo Owners and the Debtor and Weinberger using the Debtor as a vehicle and indistinguishable from the myriad cases in which Bankruptcy Courts have dismissed cases as two-party disputes filed on the even of foreclosure merely as a tactic to delay foreclosure or, in this case, the sale of the Condo Units to the Condo Owners.  The two-party dispute is confirmed by the timing of the filing of the bankruptcy the structuring of false or insider claims within the few months prior to the bankruptcy.

72.     *Fifth*, the timing of the Debtor's filing evidences an intent to delay or frustrate the efforts of the Condo Owners to enforce their rights all evidencing an intent to delay or frustrate their efforts which is the basis for finding "bad faith", *In re Red Bull Taxi Inc.*, 2017 Bankr. 1209, at *11-12.

73.     *Sixth*, the Debtor has no cash flow as reflected in its initial filings and its Monthly Operating Report.  Nor does the Debtor suggest how an administratively insolvent Debtor can proceed in Chapter 11.

74.     *Seventh*, the Debtor does not appear to have employees and cannot afford to pay such employees in any event.

## THE DEBTOR HAS NO PROSEPCT OF REHABILITATION AND THERE IS SUBSTANTIAL, CONTINUING DIMINUTION OF ESTATE ASSETS

75.    Under §1112(b)(4)(A) of the Bankruptcy Code, cause exists to dismiss a case if there is "*substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation.*" 11 U.S.C. §112(b)(4)(A). Both exist here.

76.    To date, the Debtor has failed to proceed in this case. There is no deadline for filing claims. No other action has been taken to proceed with the Debtor's professed Plans in this Chapter 11 case. Since its filing, there has been no activity at all. This is hardly a situation where the Debtor had acted in an expedited manner. Besides the fact that there is no income, the Debtor has not demonstrated any ability at all to proceed on a going forward basis with its proposed Plan. The only real asset is encumbered by the Condo Owners claims as well as the Mortgagee. The Condo Owners claims, as owners, means that any attempt to breach those claims will simply increase the amount of those claims by the difference between the Contract price and the fair market value of the Condo Units. Thus, rather than proceed to reorganization, the Debtor will proceed to a liquidation.

77.    Simply put, the Debtor is administratively insolvent, at this point, and will become more insolvent as time goes on because the Debtor has no cash flow at all, to keep current, on any post-petition obligations.

## ALTERNATIVELY, THE COURT SHOULD GRANT RELIEF FROM THE AUTOMATIC STAY

78.    If the Court determines that there is a utility in allowing the Debtor to remain in bankruptcy, relief from the automatic stay should be granted to allow the Condo Owners to exercise their remedies, under State Law, and their agreements to Close on the sale of the Condo Units. Cause exists for this relief for the same reasons that cause exists to dismiss the case and,

furthermore, relief from the automatic stay is justified because the Condo Owners lack adequate protection and the Debtor has no remaining equity in the Condo Units.

79.     Except for the issue of equity, the Debtor bears the burden of proof on all issues after an initial showing of cause. *See* 11 U.S.C. §362(g).

80.     It should be noted, the standards establishing cause of dismissal of a case under §1112(b) of the Bankruptcy Code and cause to grant stay relief under §362(d)(1) of the Bankruptcy Code are similar. *See In re 234-6 W. 22ⁿᵈ St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). Therefore, for the reasons set forth above, including lack of good faith and the lack of any prospects for a successful reorganization, cause exists to grant the Condo Owners for relief from the automatic stay.  It should be noted that the cornerstones on limitations for proceeding to a closing have been articulate in the various State Court Orders and Judgements defining the rights and obligations of the Condo Owners including their rights for any delays in effecting a closing.  The *Sonnax Factors*, which describe the factors in determining whether cause exists to lift the stay set forth in *In re Sonnax Industries*, 907 F.2d 1280, 1286 (2ⁿᵈ Cir. 1990) have already been addressed above and will not be repeated here.  It is clear that lifting the stay would result in a complete resolution of the issues and a specialized tribunal consisting of the New York State Supreme Court with extensive knowledge and background of this case has been established and, ultimately, whether the interest of judicial economy should justify the lifting of the stay all militate towards lifting the stay.

## CONCLUSION

The Court should permit the dismissal of this case or, alternatively, lift the stay to protect the interests of the innocent Condo Owners over any competing and questionable claims of other creditors who, at absolute best, entered into business dealings with the Debtor and Weinberger, at

their risk, for a profit motive. This Court should not enter into further determinations based on the long history of the State Court proceedings which will adversely affect the interests of the Condo Owners and prevent the Closing of the Condo Units and the release of available cash to meet the obligations of the Debtor's Secured Creditor.

Dated: New York, New York
      May 28, 2025

                            ***SOLOMON OBERLANDER***
                            ***SHLOMIE FREUND***
                            ***SHMUEL BABAD***

By:    /s/ Leo Fox
        Leo Fox, Esq.
        *Attorney for Solomon Oberlander,*
        *Chevad Freund and Shmuel Babad*
        630 Third Avenue – 18th Floor
        New York, New York 10017
        (212) 867-9595
        leo@leofoxlaw.com

Leo Fox, Esq.
*Attorney for the Debtor*
630 Third Avenue, 18th Floor
New York, New York 10017
(212) 867-9595
leo@leofoxlaw.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

IN RE:                                              Chapter 11

502 GRACE HOLDINGS INC.,                            Case No.:  24-42826 (NHL)

                        Debtor.
------------------------------------------------------------X

### NOTICE OF MOTION FOR PROPOSED ORDER DISMISSING THE CASE

***SIRS:***

   ***PLEASE TAKE NOTICE*** that upon the annexed Application of Solomon Oberlander, Shlomie Freund and Shmuel Babad, by their attorney Leo Fox, Esq., for an Order Dismissing the Case, the undersigned shall move on July 8, 2025 at 3:30 p.m. before the Honorable Nancy Hershey Lord, United States Bankruptcy Judge, United States Bankruptcy Court, Eastern District of New York, in her Courtroom, 271-C Cadman Plaza, Brooklyn, New York 11201, for an Order Dismissing the Case and for such other and further relief as is proper.

   ***PLEASE TAKE FURTHER NOTICE*** that objections, if any, to the relief sought shall be in writing, and served by first class mail upon Leo Fox, Esq., counsel to the Debtors, 630 Third Avenue, 18th Floor, New York, New York 10017, and upon the Office of the United States Trustee, Alexander Hamilton Custom House, One Bowling Green, Room 534, New York, New York 10004, so as to be received prior to seven (7) days before the return date of this motion at 12:00 noon, and at least seven (7) days prior to the return date of this motion, a courtesy copy of such objections shall be delivered to the Chambers of the Honorable Nancy Hershey Lord, United

FoxNAS\Leo\Clients\Oberlander Condo\Notice of Motion to Dismiss-Automatic Stay\V5\5-28-2025

States Bankruptcy Judge, United States Bankruptcy Court, Eastern District of New York, 271-C

Cadman Plaza, Brooklyn, New York, together with proof of service thereof, in accordance with

the Local Rules, and filed with the Court.

Dated: New York, New York
      May 28, 2025

                    Yours etc.,

                    *SOLOMON OBERLANDER*
                    *SHLOMIE FREUND*
                    *SHMUEL BABAD*

By:     */s/ Leo Fox*
          Leo Fox, Esq.
          *Attorney for Debtor Solomon Oberlander,*
          *Shlomie Freund and Shmuel Babad*
          630 Third Avenue – 18th Floor
          New York, New York 10017
          (212) 867-9595
          leo@leofoxlaw.com